IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-17

No. COA20-292

Filed 16 February 2021

Scotland County, No. 17-CVS-646

JOHN WAYNE KING, JR. and LESLIE LYLES KING, Plaintiffs,

v.

DUKE ENERGY PROGRESS, LLC and CAROLINA TREE EQUIPMENT, INC. d/b/a
CAROLINA TREE CARE, Defendants.

Appeal by Plaintiffs from judgment entered 6 January 2020 by Judge Gale
Adams in Scotland County Superior Court. Heard in the Court of Appeals 27 January
2021.

*Nichols & Crampton, P.A., by Adam M. Gottsegen, for the Plaintiffs-Appellants.*

*Robinson Elliott & Smith, by William C. Robinson and Dorothy M. Gooding,
for the Defendants-Appellees.*

JACKSON, Judge.

¶ 1 John Wayne King, Jr., and Leslie Lyles King ("Plaintiffs") appeal from the trial
court's judgment granting a directed verdict in favor of Duke Energy Progress, LLC
("Duke Energy") and Carolina Tree Equipment, Inc. d/b/a/ Carolina Tree ("Carolina
Tree") (collectively, "Defendants") and awarding Plaintiffs nominal damages. We
reverse the judgment of the trial court because the cost of replacing the ornamental
trees was competent evidence of the diminution in value of Plaintiffs' property, where

the property was owned for personal use.  Plaintiffs are entitled to a new trial.

## I.     Background

Plaintiffs live in Laurinburg, North Carolina, where they own real property on which several large Japanese Maple trees once stood.  Plaintiffs purchased the property in March of 2013, and planned to raise a family there and one day, retire.

On 4 August 2016, while engaged by Duke Energy, Carolina Tree removed two large Japanese Maple trees from the property and severely damaged a third.  Carolina Tree also damaged some landscape lighting that day.  Before the trees were removed, they obscured the view of power lines on and near Plaintiffs' property.  These power lines are now visible from Plaintiffs' sunset deck, which is above their master bedroom.

Plaintiffs initiated the present action on 6 September 2017.  In their complaint, Plaintiffs alleged causes of action for violation of N.C. Gen. Stat. § 1-539.1, trespass to chattel, trespass, and negligence, and requested declaratory relief.  Duke Energy answered on 12 December 2017 and Carolina Tree answered on 3 January 2018.  On 21 November 2018, counsel for Carolina Tree substituted for Duke Energy's prior counsel, and thereafter represented both of Defendants.

The matter came on for trial on 13 November 2019 before the Honorable Gail M. Adams in Scotland County Superior Court.  Judge Adams presided over a two-day jury trial.  Defendants moved for a directed verdict at the close of Plaintiffs' evidence.

After hearing argument on the motion for directed verdict, the trial court indicated that it was inclined to grant the motion, and released the jury. On 6 January 2020, the trial court entered a judgment directing a verdict in favor of Defendants and awarding Plaintiffs only nominal damages. Plaintiffs entered timely notice of appeal from the trial court's judgment.[1]

## II.    Standard of Review

> Under Rule 50 of the North Carolina Rules of Civil Procedure, a party may move for a directed verdict at the close of the evidence offered by the opponent and at the close of all of the evidence. The motion is only proper in a jury trial. It tests the sufficiency of the evidence to go to the jury and to support a verdict for the non-moving party. Thus, a motion for a directed verdict presents the same question for both trial and appellate courts: Whether the evidence, taken in the light most favorable to the nonmovant, is sufficient for submission to the jury.

*Berke v. Fidelity Brokerage Servs.*, 841 S.E.2d 592, 595 (N.C. Ct. App. 2020) (internal marks and citation omitted).

## III.    Analysis

There are two questions presented by this appeal: first, the correct measure of damages in an action for trespass to timber where the trees are ornamental and therefore have little or no commercial value after they are cut; and second, whether

---

[1] Plaintiffs also noticed appeal from the trial court's order denying their partial motion for summary judgment. We do not reach the trial court's denial of Plaintiffs' partial motion for summary judgment because we reverse the trial court's judgment in favor of Defendants and remand this case for a new trial.

evidence of the replacement cost of ornamental trees, by itself, is sufficient to demonstrate the diminution in value of real property owned for personal use from which said trees are removed. We address each issue in turn.

## A. Damages for Trespass to Timber

¶ 7      Our Supreme Court has recognized two different, albeit similar measures of damages for the tort of trespass to timber. *Jenkins v. Montgomery Lumber Co.*, 154 N.C. 355, 358, 70 S.E. 633, 634 (1911). In some cases it has been held that the correct measure is the "value of the timber as a chattel[,] . . . as soon as it [is] severed from the land—at the stump[,]" *Bennett v. Thompson*, 13 Ired. 146, 148 (1851), whereas in others, the Supreme Court has held that the correct measure is "the difference in the value of the land before and after cutting," *Jenkins*, 154 N.C. at 358, 70 S.E. at 634. However, the Supreme Court has observed that, "[a]s to ornamental or fruit trees, the authorities are practically unanimous that the measure of damage is the difference in the value of the land before and after cutting." *Williams v. Elm City Lumber Co.*, 154 N.C. 306, 309, 70 S.E. 631, 632 (1911). *See also Bennett*, 13 Ired. at 149 (noting that the rule valuing the timber at the time of cutting is inapplicable to ornamental trees).

¶ 8      North Carolina General Statute § 1-539.1 provides a statutory cause of action for trespass to timber. Under N.C. Gen. Stat. § 1-539.1(a),

> [a]ny person, firm or corporation not being the bona fide

> owner thereof or agent of the owner who shall without the consent and permission of the bona fide owner enter upon the land of another and injure, cut or remove any valuable wood, timber, shrub or tree therefrom, shall be liable to the owner of said land for double the value of such wood, timber, shrubs or trees so injured, cut or removed.

N.C. Gen. Stat. § 1-539.1(a) (2019). The statute thus authorizes awards of enhanced damages. *See id.* It has also been construed to impose strict liability. *Britt v. Georgia-Pacific Corp.*, 46 N.C. App. 107, 109-10, 264 S.E.2d 395, 398 (1980). However, under the statutory cause of action, only the commercial value of the timber at the time of cutting is recoverable. *Barnard v. Rowland*, 132 N.C. App. 416, 424, 512 S.E.2d 458, 464 (1999). Thus,

> [t]wo alternative measures of damages are available in a suit claiming unlawful cutting of timber:
>
> [o]ne gives the landowner the difference in the value of his property immediately before and immediately after the cutting. The other gives [the] plaintiff the value of the timber itself. This latter value is then doubled by reason of N.C.G.S. 1-539.1(a)[,] which allows [the] plaintiff to recover double the value of timber cut or removed.

*Id.* Accordingly, as a practical matter, for trees without commercial value after they are cut, enhanced damages under N.C. Gen. Stat. § 1-539.1 will be unavailable.

**B. Replacement Costs as Evidence of Diminution in Value**

This Court has held that the replacement cost of trees can be used to establish the diminution in value of real property from which they are removed where the property is owned for personal use. *Huberth v. Holly*, 120 N.C. App. 348, 354, 462

S.E.2d 239, 243 (1995). In *Harper v. Morris*, 89 N.C. App. 145, 147, 365 S.E.2d 176, 178 (1988), the first time our Court considered the question, we rejected the argument that the aesthetic value of the trees was inappropriate for the jury to consider when determining the extent to which the value of the real estate had been diminished. Instead, we held that the diminished value of the real estate could be determined by reference to the aesthetic value of the trees, as measured by "the cost of replacing or restoring the trees . . . as is reasonably practicable." *Id.* Likewise, in *Lee v. Bir*, 116 N.C. App. 584, 590-91, 449 S.E.2d 34, 38-39 (1994), we rejected the argument that the aesthetic value of the trees and the replacement cost of the trees, including the type of replacement trees used, were improper for the jury to consider when determining the landowner's damages. Thus, in an action for trespass to timber where the trees have little or no commercial value after they are cut, we hold that evidence of the cost of reasonable remedial measures, such as replacement and restoration, constitutes competent evidence of the diminution in value of the real property, provided it is owned for personal use.

¶ 10     We have previously cited portions of the Second Restatement of Torts in this context, *see Huberth*, 120 N.C. App. at 354, 462 S.E.2d at 243, and note that it is consistent with our holding above. Comment b to § 929(1)(a) of the Restatement is illustrative:

> [I]f a building such as a homestead is used for a purpose

> personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion.

Restatement 2d of Torts § 929, cmt. b (1979). Like the gardener in the Restatement, landowners injured by a trespass to ornamental trees on their property are entitled to recover the "difference in the value of the land before and after cutting." *Williams*, 154 N.C. at 309, 70 S.E. at 632. And they may demonstrate the extent of the diminution in value of their property by presenting evidence of "the cost of replacing or restoring the trees . . . as is reasonably practicable." *Harper*, 89 N.C. App. at 147, 365 S.E.2d at 178.

**C. The Motion for Directed Verdict**

Viewing the evidence in the light most favorable to Plaintiffs, as we must, *Berke*, 841 S.E.2d at 595, we hold that the trial court erred in directing a verdict in favor of Defendants because the replacement cost of the trees was competent evidence of the diminution in value of the real property from which they were removed, *Harper*, 89 N.C. App. at 147, 365 S.E.2d at 178. "[T]o survive a motion for directed verdict . . . , the plaintiff's evidence . . . does not have to be either strong, convincing, consistent, or even credible to anyone except the jury[.]" *Millikan v. Guilford Mills,*

*Inc.*, 70 N.C. App. 705, 709-10, 320 S.E.2d 909, 913 (1984). Instead, "[i]f there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied." *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 31, 795 S.E.2d 253, 257 (2016) (citation omitted). Defendants admitted to cutting down the trees illegally and the only fact question for the jury to consider was damages. Accordingly, the evidence of Plaintiffs' damages in the form of the replacement cost of the trees was sufficient "to go to the jury and to support a verdict[.]" *Berke*, 841 S.E.2d at 595.

## IV. Conclusion

We reverse the judgment of the trial court granting Defendants' motion for directed verdict because the cost of remediating the damage to the ornamental trees at Plaintiffs' home was competent evidence of the diminution in value of the real property where the trees once grew. Accordingly, we remand this case for a new trial.

REVERSED AND REMANDED.

Judges ARROWOOD and CARPENTER concur.